**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**In re:**

| | |
|---|---|
| **LOUIS J. PEARLMAN, et al.,** | Case No.: 6:07-bk-00761-KSJ |
| | **Chapter 11** |
| Debtors, | **Jointly Administered** |
| _____/ | |
| | |
| **SONEET R. KAPILA, as Chapter 11 TRUSTEE for TRANS CONTINENTAL AIRLINES, INC.,** | **DISPOSITIVE MOTION** |
| Plaintiff, | |
| v. | Adv. P. No. 6:09-ap-00474-KSJ consolidated with Adv. P. No. 6:09-ap-00050-KS |
| **SUNTRUST MORTGAGE, INC.,** | |
| Defendant. | |
| _____/ | |

**SUNTRUST MORTGAGE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, SunTrust Mortgage, Inc. ("SunTrust Mortgage"), by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 7056 of the Federal Rules of Bankruptcy Procedure, and this Court's Order dated January 30, 2014 (Doc. 54), moves for partial summary judgment in its favor and against Plaintiff, Soneet Kapila (the "Trustee") as to the Trustee's action to recover two of the four challenged transfers at issue in this case. In support thereof, SunTrust Mortgage will show that there are no genuine issues of material fact and that SunTrust Mortgage is entitled to the entry of judgment in its favor as to those two transfers.

**I.     BACKGROUND AND FACTS**

The Trustee seeks to recover from SunTrust Mortgage four payments totaling $341,051.59 that were made in February and March of 2005 by TransContinental Airlines, Inc.

("TCA") pursuant to the direction of Michael J. Crudele. (See Exh. **"A,"** Affidavit in Support of SunTrust Mortgage's Opposition to Motion for Summary Judgment, at ¶ 12 & Comp. Exh. 9 thereto).[1]  SunTrust Mortgage's Motion for Summary Judgment is directed at two of those transfers totaling $238,540.93 (the "Transfers")

The Transfers were made by two checks drawn on TCA's bank account dated February 11, 2005 (for $100,000.00) and March 10, 2005 (for $138,540.93) and were applied to satisfy all but $678.27 of the mortgage held by SunTrust Mortgage (the "Captains Drive Mortgage") on the Crudeles' residential real property located at 1-64 Captains Drive, Lanark, Illinois (the "Captains Drive Property").[2] (Id. at ¶¶ 5, 7 & 9 & Exh. 2, 4 & 6 thereto).[3] (Id. at Exh. 6 thereto). On May 9, 2005 SunTrust Mortgage executed a satisfaction of the Captains Drive Mortgage, which was recorded on May 31, 2005 in the official records of Carroll County, Illinois. (Id. at Exh. 8 thereto).

On or about February 27, 2006, the Crudeles sold the Captains Drive Property to unrelated third parties for total sales price of $556,500.00. (See Exh. **"B,"** Affidavit of Billy W. Shroyer, at Exh. A thereto). The amount of the net sales proceeds due to the Crudeles was $515,619.44. (Id.). On March 8, 2006, shortly after the closing of the sale, Mr. Crudele deposited all $515,619.44 of the sales proceeds back into TCA by endorsing the settlement check over to TCA. (Id.). An account statement provided by TCA to Mr. Crudele that was produced

---

[1] SunTrust Mortgage supports this motion with the same affidavits filed in support of its opposition to the Trustee's Motion for Summary Judgment. References to those affidavits are as they appear as exhibits to SunTrust Mortgage's Supplemental Response in Opposition to Motion for Summary Judgment filed on even date herewith.

[2] SunTrust Mortgage is not moving for summary judgment as to the remaining two transfers totaling $102,509.96. SunTrust Mortgage would agree that issues of fact exist as to those transfers, which preclude summary judgment in favor of either party.

[3] The memo line of the checks reference the loan number (0142887066) of the SunTrust Mortgage loan secured by the Captains Drive Mortgage. (Exh. "A," at Comp. Exh. 9 thereto). The loan payment history for loan number 0142887066 shows allocation of the payments to the loan balance. (Id. at Exh. 6 thereto).

by the Trustee in discovery confirms the sum of $515,619.44 was deposited with TCA on March 8, 2006. (See Exh. **"C"**). Mr. Crudele's plea agreement further confirms that he deposited $515,619.44 back into TCA in 2006. (Doc. 42, Exh. D, p. 23). Therefore, there is no genuine issue regarding these facts.

## II.  ARGUMENT

### A.  Summary Judgment Standard

Summary Judgment is appropriate when the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those materials that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53 (1986). If the non-moving party fails to show that there is a genuine issue as to an essential element of the case on which the non-moving party bears the burden of proof, then summary judgment is appropriate. Id. at 323, 106 S. Ct. at 2552.

### B.  Summary of the Argument

Even if the Court were to assume that the Trustee has established a *prima facie* case for avoidance of the Transfers under § 548 or § 544, via Chapter 726, Florida Statutes, the Trustee would not be permitted to recover from SunTrust Mortgage because such a recovery would be a windfall to the estate. The purpose of § 550 is to return the estate to the position it would have been in had the avoidable transfers never occurred. The Transfers were used to reduce the Captains Drive Mortgage, thereby increasing the Crudeles' equity in the Captains Drive Property. The Crudeles subsequently converted their equity into cash, which they then deposited back into TCA, effectively reversing the Transfers. Because the Transfers were returned, the estate is no worse off than it would have been if the Transfers were never made. Thus, recovery

JAX\1857332_2
JAX\1857332_2

-3-

from SunTrust Mortgage would be an impermissible double satisfaction—one from the Crudeles, and one from SunTrust Mortgage. As set forth below, § 550(d)'s "single satisfaction" rule and the Court's equitable powers under § 105 prohibit such windfall recoveries. Therefore, the Court should grant summary judgment in favor of SunTrust Mortgage as to the Transfers.

C.     **The Trustee Cannot Obtain a Windfall Recovery from SunTrust Mortgage**

It is well settled that avoidance and recovery are distinct concepts under the Bankruptcy Code. E.g., Bakst v. Wetzel (In re Kingsley), 518 F.3d 874, 877 (11th Cir. 2008) ("In fraudulent transfer actions, there is a distinction between avoiding the transaction and actually recovering the property or the value thereof.") (quotations omitted).[4] Avoidance under one or more of the Code's avoidance provisions does not automatically translate into recovery. E.g., Bakst v. Wetzel (In re Kingsley), Bankr. No. 06-12096-BKC-PGH, Adv. Pro. No. 06-2109-BKC-PGH-A, 2007 WL 1491188, at * 3 (Bankr. S.D. Fla. May 17, 2007). Instead, once the trustee establishes his ability to avoid a transfer under § 548 or § 544, he must then establish his ability to recover under § 550. Hence, the prohibition against windfall recoveries is not a defense to the *prima facie* case; rather, it governs the recovery permitted under § 550.

Section 550(a) provides, in pertinent part: "Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property . . . ." 11 U.S.C. § 550(a). It is well recognized that the purpose of § 550(a) is "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." In re Kingsley, 2007 WL 1491188 at * 3 (quotation omitted), aff'd In re Kingsley, 518 F.3d 874. This purpose is embodied in § 550(d), which mandates that the "trustee is entitled

---

[4] Suhar v. Burns (In re Burns), 322 F.3d 421, 427 (6th Cir.2003) ("[A]voidance and recovery are distinct concepts and processes.").

to only a single satisfaction under subsection (a) of this section." Although § 550(d)'s "single satisfaction rule" is typically implicated in situations where the trustee has sued the initial and subsequent transferees, it is not limited to those situations. Instead, courts have held that § 550(d) also prevents the trustee from recovering a transfer where the transfer was returned to the debtor. E.g., Bakst v. Sawran (In re Sawran), 359 B.R. 348, 352 (Bankr. S.D. Fla. 2007).

Prohibiting windfall recoveries is also justified as an exercise of the bankruptcy court's equitable powers under § 105. E.g., Dahar v. Jackson (In re Stanley Jackson), 318 B.R. 5, 27 (Bankr. D.N.H. 2004) ("[E]quity guards against windfalls in general."). The Eleventh Circuit has emphasized that equitable considerations "play a major role" in applying § 550. Martinez v. Hutton (In re Harwell), 628 F.3d 1312, 1322 (11th Cir. 2010). See also In re Kingsley, 518 F.3d at 877 ("We have indicated that the cornerstone of the bankruptcy courts has always been the doing of equity.") (quotations omitted); In re Sawran, 359 B.R. at 353 ("Courts have often used section 105(a) to mitigate the harsh results from a literal application of section 550. . . . This prevents a trustee from being able to recover from a party who is innocent of wrongdoing and deserves protection."). Thus, as set forth below, bankruptcy courts have properly exercised their equitable powers under § 105 in conjunction with § 550(d) to preclude recovery where the transfer was returned to the estate.

Here, the Transfers were used to pay down the Crudeles' mortgage on the Captains Drive Property, thereby increasing the Crudeles' equity in the property. The Crudeles subsequently cashed in their equity when they sold the Captains Drive Property in February 2006. The Crudeles then deposited all of the cash proceeds from the sale—$515,619.44—back into TCA. Had the $238,540.93 in Transfers not been made, the Captains Drive Mortgage would not have been reduced, and the net proceeds of the sale would have been $238,540.93 less. The use of the

Transfers to pay down the mortgage was reversed when the Crudeles deposited the sale proceeds back into TCA. To allow the Trustee to recover from SunTrust Mortgage transfers that have already been returned to TCA would sanction an impermissible windfall to the estate.

The Trustee will argue there will be no windfall recovery because after making the deposit, Mr. Crudele withdrew more funds from TCA. It is undisputed, however, that none of those subsequent withdrawals by Crudele were paid to SunTrust Mortgage. What Mr. Crudele did after returning to TCA the money paid to SunTrust Mortgage is not relevant to whether SunTrust Mortgage is liable under § 550. SunTrust Mortgage is not responsible for those subsequent transfers from TCA; Mr. Crudele is. In fact, the Trustee already sued the Crudeles for all of the transfers from TCA made for their benefit (including the Transfers at issue in this case), and the Trustee settled and resolved all of those claims. SunTrust Mortgage is not seeking a blanket credit for any and all money deposited by the Crudeles into TCA from any source. Rather, SunTrust Mortgage seeks recognition of the direct, traceable connection between the Transfers that reduced the Captains Drive Mortgage and the subsequent deposit back into TCA of the entire $515,619.44 Captains Drive Property sales proceeds. The fact is that TCA was returned to the position it would have been in had the Transfers never occurred. Mr. Crudele's subsequent depletion of the estate via unrelated transfers to other parties does not change the fact that Transfers were reversed by the deposit of the sale proceeds.

Further, equitable considerations clearly favor SunTrust Mortgage. SunTrust Mortgage had no knowledge of Pearlman's Ponzi scheme. Indeed, Mr. Crudele denies knowing that TCA was a Ponzi scheme, which is entirely credible, given that he deposited money into TCA. Moreover, SunTrust Mortgage was required to accept the Transfers as payments tendered in satisfaction of the Captains Drive Mortgage. See §§ 673.6021(1); § 701.03 & 701.04(2), Fla.

Stat. SunTrust Mortgage had no option but to reduce and the Captains Drive Mortgage, and, having done so, it is unable to look to the Captains Drive Property to recoup its losses in the event it is found to be liable to the Trustee.

**D.     Case Law Supports Denying the Trustee a Windfall**

Although no cases with facts similar to this case could be found, the principles underlying the following cases are nonetheless applicable here. Each case stands for the proposition that where the debtor has subsequently received the benefit of a transfer—through repayment or the payment of the debtor's expenses—§ 550(d)'s "single satisfaction rule" and the court's equitable powers under § 105(a) operate to prohibit the estate from recovering the value of the transfer from the transferee under § 550(a).

In In re Kingsley, 2007 WL 1491188, the debtors transferred money to a relative, who subsequently returned some of the money to the debtors and used the rest to pay the debtors' expenses. Although the court concluded that there had been a fraudulent transfer and that the defendant was complicit in it, the court held the trustee could not recover to the extent the transfer had been repaid or used for the benefit of the debtors. The court reasoned: "The Trustee possesses the power to avoid fraudulent transfers in order to prevent the depletion of the estate, to promote an equitable distribution of the debtor's assets, and to protect creditors who advance credit in ignorance of the fraud. However, to the extent that the fraudulent transfer is repaid prepetition, the claim is satisfied." Id. at * 4 (citations omitted). The court also concluded that the same result was permitted under Florida's fraudulent transfer act, specifically § 726.109(3), Florida Statutes, which provides that recovery is "subject to adjustment as the equities may require." Id.

The bankruptcy court's decision in In re Kingsley was appealed up to the Eleventh Circuit, which affirmed the decision in Bakst v. Wetzel (In re Kingsley), 518 F.3d 874 (11th Cir.

2008). In finding that the bankruptcy court did not err in exercising its equitable powers to give the defendant credit to the extent that he repaid the transfer or paid the debtors' expenses, the Eleventh Circuit noted that "§ 550 is designed to restore the estate to the financial condition that would have existed had the transfer never occurred." Id. at 877 (quotation omitted). The court also reiterated that "the cornerstone of the bankruptcy courts has always been the doing of equity." Id. (quotation omitted). Thus, the Eleventh Circuit has expressly authorized the giving of equitable credits to prevent windfall recovery where the transfers sought to be avoided had been returned or used to benefit the estate.

In Dobin v. Presidential Financial Corporation of Delaware Valley (In re Cybridge Corp.), 312 B.R. 262 (D.N.J. 2004), the district court considered an appeal of the bankruptcy court's order awarding the trustee a zero recovery in a § 549 avoidance action. Pursuant to a prepetition factoring agreement, the defendant advanced loans to the debtor secured by the debtor's accounts receivable and collected payments on the accounts receivable directly from the debtor's customers. Because the debtor failed to inform the defendant of its bankruptcy, the defendant continued to advance loans to the debtor and receive payments from customers after the petition date. When the case was converted to a chapter 7, the trustee sued the defendant seeking a return of the money it had received from the debtor's customers. Although the bankruptcy court concluded that the transfers were avoidable, it gave the defendant a credit for the money it had advanced to the debtor.

The district court affirmed on appeal, concluding that the credit for money the defendant loaned to the debtor was authorized under both § 550(d) and § 105. The court found that, absent the credit, the trustee would receive a second satisfaction in violation of § 550(d). In re Cybridge Corp., 312 B.R. at 259. The court reasoned, "The purpose of Section 550 is to make the estate

JAX\1857332_2
JAX\1857332_2
-8-

whole. Here, the estate is already whole: that which was taken out by [the defendant] was already put back in." Id. at 270-71. The court also concluded that the bankruptcy court's exercise of its § 105(a) equitable powers furthered the aims of § 550(a): "'It is not the objective of the bankruptcy laws to confer windfalls on debtors.'" Id. at 272-73 (quoting In re Chicago, Milwaukee, St. Paul & P.RR. Co., 791 F.2d 524, 527 (7th Cir. 1986)).

In Dahar v. Jackson (In re Stanley Jackson), 318 B.R. 5 (Bankr. D.N.H. 2004), the bankruptcy court found it would be inequitable to permit the trustee to recover the value of real properties the debtor transferred to his spouse prior to the petition date, where the property had been sold and the proceeds used to pay the debtor's business and living expenses. The court reasoned: "Equitable adjustments . . . are not limited solely to post-transfer improvements. Instead, equity guards against windfalls in general." Id. at 27 (citations omitted). The court concluded it would be "a windfall to the estate to allow the Plaintiff full recovery of all the proceeds from the sale of the [real properties] without making an equitable adjustment to account for the proceeds the Defendant used to pay the Debtor's bills and cover the family expenses." Id. at 27-28.

In Bakst v. Sawran (In re Sawran), 359 B.R. 348 (Bankr. S.D. Fla. 2007), the debtor made a prepetition transfer to her father in order to avoid her creditors. When the father became ill, he transferred the funds to his other children and instructed them to use the money to pay the debtor's expenses, which they did. In the trustee's action against the children, the bankruptcy court refused to permit the trustee to recover to the extent the funds had been used to pay the debtor's expenses. The court reasoned that § 550(d) reflects § 550(a)'s purpose of restoring the estate to the financial condition it would have enjoyed if the transfer had not occurred by limiting a trustee's recovery to a single satisfaction. Id. at 351. The court further reasoned that § 550(d)

recognizes the distinction between recovery and avoidance and "empowers courts to prohibit a trustee from recovering under [s]ection 550(a) from a transferee that has already returned to the estate that which was taken in violation of the Code." Id. at 352 (quotation omitted). The court also concluded that the exercise of equitable powers under § 105 was not contrary to any provision of the Code; rather, "[c]onferring a windfall to the debtor's estate would be contrary to section 550's purpose of merely restoring the estate to its pre-transfer condition." Id. at 354.

Finally, in Bakst v. Clarkston (In re Clarkston), 387 B.R. 882 (Bankr. S.D. Fla. 2008), the debtor transferred real property to the defendant, who subsequently sold the property. The debtor instructed the defendant to hold the proceeds of the sale to be disbursed as he directed. The defendant subsequently made payments to the debtor using the proceeds. When the debtor filed bankruptcy, the trustee sought to recover the proceeds of the sale from the defendant. The bankruptcy court found that there had been a fraudulent transfer, but that "[a]voidance does not automatically lead to recovery." Id. at 890. The court gave the defendant credits for the payments she made to the debtor, noting: "If the Trustee was permitted to recover these payments from the Defendant, the estate would essentially recover the payments twice and receive a windfall." Id. at 891. According to the court, crediting the defendant for payments she made to the debtor "will restore the estate to the financial condition that would have existed had the transfer never occurred." Id.

Precluding the Trustee from recovering the Transfers from SunTrust Mortgage is consistent with the foregoing case law. The Transfers were reversed and returned to TCA when Mr. Crudele deposited the proceeds of the sale of the Captains Drive Property back into TCA. The Transfers ultimately benefitted the estate by increasing the sales proceeds available to Mr. Crudele for deposit into TCA.

### III.     CONCLUSION

In conclusion, § 550(d) and the Court's equitable powers under § 105(a) preclude the Trustee from recovering the $238,540.93 in Transfers from SunTrust Mortgage and entitle SunTrust Mortgage to a partial summary judgment in its favor as to those two Transfers. The estate has already been restored to the position it would have been in had the Transfers not been made by virtue of the fact that the Crudeles deposited the equity generated by the Transfers back into TCA when they sold the Captains Drive Property.

Dated:  April 10, 2014.

**ROGERS TOWERS, P.A.**

 /s/  Jacob J. Payne
Gregory F. Lunny
Florida Bar No.: 883654
Jacob J. Payne
Florida Bar No.: 0639451
1301 Riverplace Boulevard, Suite 1500
Jacksonville, Florida 32207
(904) 398-3911 (telephone)
(904) 396-0663 (facsimile)
**glunny@rtlaw.com** (email)
**jpayne@rtlaw.com** (email)

Attorney for SunTrust Mortgage, Inc.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 10, 2014, I electronically filed the foregoing with the Clerk of Court by using the Case Management/Electronic Case Filing ("CM/ECF") system which will send notice of electronic filing to all parties indicated on the electronic filing receipt.

 /s/  Jacob J. Payne
Attorney