UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

LOUIS J. PEARLMAN, *et al.,*

Debtor.

_____/

SONEET R. KAPILA, as CHAPTER 11
TRUSTEE for LOUIS J. PEARLMAN *et al*,

Plaintiff,

v.

SUNTRUST MORTGAGE, INC.

Defendant.

_____/

Case No. 6:07-bk-00761-KSJ
Chapter 11
Substantively Consolidated

Adv. P. No.6:09-00474-KSJ

## SONEET R. KAPILA'S RESPONSE IN OPPOSITION TO SUNTRUST MORTGAGE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Soneet R. Kapila ("Plaintiff" or "Trustee"), as Liquidating Trustee for the consolidated estate of Louis J. Pearlman ("Pearlman"), and each substantively consolidated debtor (collectively the "Debtors"), by and through undersigned counsel, files this *Response in Opposition to SunTrust Mortgage's Motion for Partial Summary Judgment* (the "Partial Summary Judgment Motion"), and in support thereof states as follows: [1]

## PRELIMINARY STATEMENT

This case is a basic constructively fraudulent transfer claim against SunTrust Mortgage, Inc. ("SunTrust"). The undisputed facts entitling the Trustee to avoidance and recovery of the transfers at issue are:

---

[1]  In support of this response, the Plaintiff is contemporaneously filing his Supplemental Affidavit.

- Debtor Trans Continental Airlines, Inc. ("TCA") transferred $341,051.59 to SunTrust between February 11, 2005 and March 10, 2005 (the "Transfers"). *See* ECF No. 41 at ¶¶ 28-29 and ECF No. 58-1 at pg. 91-95.

- The Transfers were made to satisfy loan obligations of non-debtors Michael and Sheila Crudele with SunTrust. *See* ECF No. 41 at ¶ 31 and ECF No. 58 at pg. 2-3.

- The Debtors were not obligated to SunTrust on Crudele's loan obligations. *See* ECF No. 41 at ¶ 32.

- The Debtors received less than reasonably equivalent value in exchange for the Transfers. *See* ECF No. 41 at ¶ 32.

- The Debtors were insolvent at the time of the Transfers. *See* ECF No. 41 at ¶ 33.

Nevertheless, SunTrust with its Partial Summary Judgment Motion asks the Court to ignore statutory and decisional authority and instead selectively apply equitable principles to achieve a result that contravenes all concepts of fairness and justice. Simply stated, Pearlman and Crudele orchestrated a money laundering scheme where TCA made transfers to various entities, including SunTrust, for the benefit of Crudele. *See* ECF Nos. 42 and 46 and Plea filings referenced therein. The Transfers were disguised commissions and compensation for Crudele's illegal role in luring unsuspecting and unsophisticated investors into the Pearlman Ponzi Scheme. *Id.* As sworn to by Crudele, the Transfers were not loans or advances but compensation funded by defrauded investors. *Id.*

Despite this uncontroverted evidence, SunTrust isolates two (2) of the four (4) transfers it received (totaling $238,540.93) and argues that these transfers are excluded from recovery pursuant to section 550(d) of the United States Bankruptcy Code (the "Bankruptcy Code") because more than a year after the Transfers were made to SunTrust, Michael and Sheila Crudele sold one of the mortgaged properties and invested the proceeds into TCA. In support of this argument, SunTrust relies on *Bakst v. Wetzel (In re Kingsley),* 518 F. 3d 874, 877 (11th Cir.

2008), and similar cases, for the proposition that Crudele's unrelated investment of $238,540.93 would result in an improper windfall to the estate. In so doing, SunTrust ignores the uncontroverted evidence and seeks to manufacture repayments where none exist.

As detailed herein, SunTrust's reliance on *Kingsley* and its progeny is wholly misplaced. To be sure, in each of the cases cited by SunTrust, the recipient of the Transfers presented an accounting demonstrating that they had returned the Transfers to the debtors pre-petition, had not benefitted from the Transfers, and was therefore entitled to a credit against any outstanding fraudulent transfer liability. In this case, SunTrust has not and cannot present evidence that it returned anything to TCA after it received the Transfers; nor can it argue that it did not receive benefits from the Transfers; nor can SunTrust rely on evidence of the Crudeles' later unrelated investments into TCA to absolve SunTrust from fraudulent transfer liability where, as in this case, Crudele extracted more than $1.3 million from TCA after the investment.[2] *See Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Committee of Bayou Group, LLC,* 758 F. Supp. 2d 222, 228-29 (S.D.N.Y. 2010) (rejecting argument that fraudulent transfer recipient should have received credit against transfer liability where the recipient failed to prove the funds were returned on a dollar-for-dollar basis to the debtors).

Accordingly, and as set forth below, SunTrust's arguments do not withstand even minimal scrutiny. The Motion for Partial Summary Judgment should be denied and summary judgment should be entered in favor of the Trustee.

---

[2] As a result of Crudele's involvement with the Debtors, the estates lost in excess of $7 million for transfers made to Crudele not including the hundreds of investors he lured into the scheme.

## BACKGROUND

### A.    Procedural History

1.    On March 25, 2009, the Trustee filed his Complaint to Avoid and Recover Fraudulent Transfers and for Other Relief against SunTrust Mortgage, Inc. ("SunTrust") [ECF No. 1].  SunTrust filed its Answer and Affirmative Defenses on April 24, 2009 [ECF No. 4].

2.    On August 26, 2013, the Trustee's Motion for Summary Judgment and Incorporated Memorandum of Law [ECF No. 40] were filed.[3]

3.    On September 19, 2013, SunTrust filed its Response in Opposition to Motion for Summary Judgment [ECF No. 44].

4.    On February 11, 2014, SunTrust filed its Amended Answer and Affirmative Defenses to Complaint to Avoid and Recover Fraudulent Transfer and for Other Relief [ECF No. 56].

5.    On April 10, 2014, SunTrust Mortgage's Supplemental Response in Opposition to Motion for Summary Judgment [ECF No. 57] was filed along with SunTrust Mortgage's Motion for Partial Summary Judgment [ECF No. 58].

### B.    Undisputed Facts

6.    Michael Crudele ("Crudele") was intimately involved in the Pearlman Ponzi Scheme and served as an unlicensed broker in connection with the fraudulent scheme.  Based upon his involvement, he has been incarcerated.  [ECF No. 42 - Exhibits "D-F"].

7.    Beginning in 1994 and continuing through 2006, Crudele illegally sold the EISA Program and the Stock Program to investors and received commissions from TCA.  Crudele also received "overrides" or commissions on money investors paid to other TCA sales agents who worked under him.  At all material times, Crudele was under a cease and desist order issued by

---

[3]  By this reference, the Trustee incorporates the arguments, law and undisputed facts in his Motion for Summary Judgment as if fully set forth herein.

4

the State of Florida prohibiting his involvement in the sale of securities.  [ECF No. 42 - Exhibits "D-F"].

8.      In addition to serving as a broker, Crudele also participated in the Pearlman Ponzi Scheme as an investor.  [ECF No. 61 at ¶ 12].

9.      The Debtors' bank records reflect the receipt of a check in the amount of $515,619.44 endorsed to TCA by Michael and Sheila Crudele on March 8, 2006.  The Debtors' records do not reflect the receipt of any funds from SunTrust.  [ECF No. 61 at ¶ 13 and Exhibit A].

10.     The Debtors' bank records reflect the receipt of a cashiers' check in the amount of $295,000.00 from Aegis Consulting, Inc. ("Aegis") on October 6, 2006. [4]  Aegis was a company owned and operated by Crudele and used by him in connection with the Pearlman Ponzi Scheme. [ECF No. 61 at ¶ 14 and Exhibit A].

11.     The Debtors' bank records indicate $1,322,983.29 was transferred, to or for the benefit of, Crudele from TCA between March 16, 2006 and October 30, 2006.  This amount does not include the Transfers made in February and March 2005 to SunTrust as compensation for Crudele's illegal broker activities.  [ECF No. 61 at ¶ 15 and Exhibit A].

12.     The Debtors' records do not reflect any loan agreement with Crudele in connection with the Transfers, nor were the Debtors otherwise obligated to make the Transfers. [ECF No. 61 at ¶ 16].  Crudele has attested in his plea agreement that the Transfers were not loans or advances but compensation.   [ECF No. 42 at pg. 122].

13.     As reflected in the Debtors' books and records and the Crudele Plea Agreement, Crudele was paid sales commissions for his services as an illegal broker in the Pearlman Ponzi Scheme.  [ECF No. 61-Exhibit A; and ECF No. 42 at pg. 122].

---

[4]  Mr. Crudele's TCA stock account statement, located in the Debtors' books and records, reflects an additional deposit credit of $295,000.00 on October 3, 2006.

14.     The Transfers were not returned to TCA by SunTrust.  [ECF No. 61 at ¶ 18].

15.     The Debtors' bank records reflect that the Debtors' estate experienced losses as a result of Crudele's activities and Transfers to or for the benefit of Crudele before and well after the March 8, 2006 deposit.  [ECF No. 61 at ¶ 19].

## LEGAL ARGUMENT AND CITATION TO AUTHORITY

### I.     The Trustee is Entitled to Recover the Transfers From SunTrust

16.     "Section 550(a) of the Bankruptcy Code allows a trustee to recover, from initial transferees, the value of certain avoidable transfers made by a debtor." *Menotte v. U.S.A. (In re Custom Contractors, LLC,* No. 12-16489, 2014 WL 1226852 * 2 (11th Cir. March 26, 2014); *see also* 11 U.S.C. § 550(a)(1).

17.     In *In re Custom Contractors, LLC,* the United States Court of Appeals for the Eleventh Circuit (the "Eleventh Circuit") reiterated that "when an initial recipient receives funds as payment of an existing debt, the recipient exercises sufficient control to be held liable as an initial transferee."  2014 WL 1226852 at * 6 (citing *Andreini & Co. v. Pony Express Delivery Servs., Inc. (In re Pony Express Delivery Servs., Inc.),* 440 F.3d 1296, 1302 (11th Cir. 2006).); *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.),* 904 F.2d at 588, 599–600 (holding a bank liable as an initial transferee where it received funds from a debtor as payment of a third party's debt owed to the bank).

18.     The undisputed facts in this case clearly establish SunTrust received the Transfers as payment for the mortgage obligations of non-debtors Michael and Sheila Crudele.  Upon receipt, SunTrust enjoyed the benefit of the Transfers.  The Transfers were not loans or advances but compensation to Crudele for his illegal activities paid from defrauded investors.  Crudele has admitted this.

19.     Nevertheless, SunTrust urges the Court to disregard applicable statutory,

decisional authority and accept its argument for derivative value credit based on independent investments made by the Crudeles into TCA after the Tranfers.

20.     Relying on a misapplication of section 550(d) of the Bankruptcy Code and related cases, SunTrust contends it should be granted "credit" for money the Crudeles invested into TCA after the Transfers were made. *See e.g., In re Kingsley,* 518 F.3d at 877; *Bakst v. Sawran (In re Sawran)*, 359 B.R. 348 (Bankr. S.D. Fla. 2007); *Bakst v. Wetzel ( In re Kingsley),* Adv. No. 06–2109– BKC– PGH– A, 2007 WL 1491188 (Bankr. S.D. Fla. May 17, 2007); *Dahar v. Jackson (In re Jackson),* 318 B.R. 5 (Bankr. D. N.H. 2004).

21.     The facts of this case are distinguishable on their face from *Kingsley* and its progeny in several important respects:

-       After the recipient of the Transfers, SunTrust did not return
        the funds to the estate.

-       The recipient, SunTrust, benefitted from the Transfers.

-       The Debtor estate has not been remunerated or otherwise
        received full satisfaction for the Transfers.

22.     Section 550(d) of the Bankruptcy Code serves to limit a trustee to a single satisfaction. 11 U.S.C. 550(d). However, the Eleventh Circuit has refused "to read section 550(d) as abrogating the right of a trustee to collect the full value of a preferential or fraudulent transfer under 550(a)." *Dzikowski v. Northern Trust Bank of Florida, N.A. (In re Prudential of Florida Leasing, Inc.),* 478 F.3d 1291, 1300 (11th Cir. 2007). As detailed below and reflected in the Trustee's Supplemental Affidavit, the estate has not received the value of the Transfers from SunTrust or Crudele and has not received satisfaction for the Transfers.

23.     Although Crudele subsequently invested money into TCA, he withdrew the proceeds of those investments months later. More importantly, the undisputed evidence establishes that the Transfers were compensation, not advances to Crudele. Thus, SunTrust's

argument that it is entitled to credit for Crudele's investments is both legally and factually

unavailing. *Goldman Sachs Execution & Clearing, L.P.,* 758 F. Supp. 2d at 228-29.

24.    Considering a similar argument for credit against fraudulent transfer liability, the

court in *Goldman Sachs* distinguished the facts in *Kingsley, Sawran, and Jackson* (all of which

are being relied on by SunTrust) noting—

> They all involve transfers to a family member by an individual
> debtor who was rendered insolvent by the transfers or was facing
> personal bankruptcy. Moreover, in each case the transferees
> submitted an accounting to the court demonstrating that the funds
> actually had been returned to the debtor and that the transferee had
> not benefitted from the transfer.

*Id.*

25.    Like the defendant in *Goldman Sachs,* SunTrust has failed to provide an

accounting demonstrating that the funds have actually been returned to TCA by SunTrust and

that SunTrust did not benefit from the Transfers.

26.    That's because it cannot. The fact is the Transfers were not returned to TCA, and

SunTrust was the recipient and direct beneficiary of the Transfers.  That Crudele, more than a

year later, sold a mortgaged property and invested the proceeds of the sale into TCA is of no

consequence where, as in this case, TCA received no value in exchange for the Transfers and did

not retain the value of Crudele's subsequent investment, which was ultimately disbursed to

Crudele.

**II.    Recovery of the Transfers Will Not Result in a Windfall to the Estate**

27.    Even if derivative value was a viable legal theory, SunTrust's ability to establish

an equitable defense based on the Cruedels' TCA investments is belied by record evidence that

after investing the $515,619.44 into TCA, Crudele extracted more than $1.3 million from TCA to

pay personal and family expenses.

28.    Rather than present a true equitable accounting, SunTrust urges the Court to

cherry-pick unrelated facts and ignore evidence to conjure equity within the fraudulent dealings of two convicted felons.

29.     If SunTrust wishes (on equitable grounds) to step into the shoes of Crudele and be awarded credit for investments into TCA by Crudele, SunTrust should also be held accountable for the withdrawals and disbursements made to or for the benefit of Crudele, which left the Debtors saddled with debt to defrauded investors, in addition to the millions of dollars transferred to Crudele as compensation for his illegal activities.

30.     The record reflects that this is not a matter that can be summarized as "no harm, no foul."  The Debtors suffered a loss as a result of the Transfers to SunTrust.  That loss was not remedied by Crudele's subsequent unrelated investments into TCA, which he later withdrew.

### III.    CONCLUSION

31.     Accordingly, the Trustee respectfully requests that the Court deny SunTrust's Motion for Partial Summary Judgment, enter Summary Judgment in favor of the Trustee and grant such other and further relief as the Court deems just and proper.

Dated this 6th day of May 2014.

> *GENOVESE JOBLOVE & BATTISTA, P.A.*
> *Counsel for Plaintiff*
> *100 SE 2nd Street, 44th Floor*
> *Miami, FL 33131*
> *Tel.: (305) 349-2300*
> *Fax.: (305) 349-2310*
>
> *By:  /s/Gregory M. Garno*
>       Gregory M. Garno, Esq., FBN 087505
>       Email: ggarno@gjb-law.com
>       Monique D. Hayes, Esq., FBN 0843571
>       Email: mhayes@gjb-law.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served by

Notice of Electronic Filing to all parties listed below this 6th day of May, 2014.


By:    Gregory M. Garno_____
ggarno@gjb-law.com


## SERVICE LIST

Paul J Battista on behalf of Plaintiff Soneet Kapila
pbattista@gjb-law.com, gjbecf@gjb-law.com

Gregory M Garno on behalf of Plaintiff Soneet Kapila
ggarno@gjb-law.com, gjbecf@gjb-law.com;pbellas@gjb-law.com

Monique Hayes on behalf of Plaintiff Soneet Kapila
mhayes@gjb-law.com, gjbecf@gjb-law.com

Jacob J Payne on behalf of Defendant Suntrust Mortgage, Inc.
jpayne@rtlaw.com, aruff@rtlaw.com

J. Ellsworth Summers, Jr. on behalf of Defendant Suntrust Mortgage, Inc.
jes@rtlaw.com, sgs@rtlaw.com